IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION 19-0071-WS-B |
| CASE CONSTRUCTION, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Default Judgment (doc. 15). The Motion is ripe for disposition.

**I. Background.**

Plaintiff, The Cincinnati Insurance Company, brought this action against defendants, Case Construction, LLC, Stephen G. Case and Tracey Case, asserting claims against the individual defendants for breach of indemnity agreement and against the business entity defendant for equitable indemnity, reimbursement and exoneration.[1] According to the well-pleaded factual allegations of the Complaint, Cincinnati issued certain surety bonds on behalf of defendant Case Construction. Those bonds took the form of performance and payment bonds issued in connection with (i) a construction contract between Case Construction and the University of South Alabama to perform work on a project known as Chemistry Building Exterior Modifications, and (ii) a construction contract between Case Construction and AltaPointe Health Systems, Inc. to perform work on a project known as Administration Buildings of AltaPointe Health Systems, Inc. (Doc. 1, ¶¶ 12-14 & Exh. 2.)

---

[1] Although the Complaint sounds solely in state-law causes of action, plaintiff had an adequate jurisdictional basis for filing the matter in federal court. Specifically, Cincinnati properly invoked federal subject matter jurisdiction by pleading specific facts showing that the parties are of diverse citizenship and that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, so as to give rise to diversity jurisdiction under 28 U.S.C. § 1332.

In issuing the surety bonds for both the South Alabama and AltaPointe projects, Cincinnati alleges that it relied on the covenants and conditions contained in a certain Agreement of Indemnity executed by defendants Stephen G. Case and Tracey Case in Cincinnati's favor. (Doc. 1, ¶¶ 8, 12.) By its express terms, the Agreement reflected that Stephen G. Case and Tracey Case were obligated to

> "exonerate, indemnify and keep indemnified [Cincinnati] from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which [Cincinnati] may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of [Case Construction, Stephen Case and Tracey Case] to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement."

(Doc. 1, Exh. 1, at 1.) The Agreement authorized Cincinnati to "pay or compromise any claim, demand, suit, judgment or expense arising out of any Bond or Bonds and any such payment or compromise shall be binding upon [Case Construction, Stephen Case and Tracey Case] and included as a liability, loss or expense covered by this Indemnity Agreement," so long as Cincinnati made such payment "in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all circumstances." (*Id.*, at 1, 4.) On its face, the Agreement appears to have been signed by Stephen Case and Tracey Case, as indemnitors, in the presence of a witness and a notary public, on July 20, 2007. (*Id.* at 7.)

The well-pleaded factual allegations of the Complaint reflect that after execution of the Agreement, Cincinnati incurred considerable losses and expense, including fees and disbursements of counsel, as a result of having issued bonds on behalf of Case Construction for the South Alabama and AltaPointe projects. (Doc. 1, ¶ 15.) In that regard, the Complaint recites factual allegations itemizing these losses and expenses as follows: (i) Cincinnati received and paid a claim submitted by Metropolitan Glass Co., Inc. in the amount of $40,181 under the South Alabama Payment Bond, as a result of Case Construction's failure to pay subcontractors and suppliers on the South Alabama project; (ii) Cincinnati sustained net losses of $353,387.32 to arrange for completion of work on the AltaPointe project and payment of subcontractors and suppliers after Case Construction's general contracting license expired on January 31, 2015, causing AltaPointe to suspend Case Construction's performance of work on that project; and (iii) Cincinnati incurred expenses, including counsel fees, in the amount of $51,669.56 at the time of filing the Complaint, as a result of having issued the bonds and pursuing the indemnitors under

the Indemnity Agreement. (Doc. 1, ¶¶ 16-19.) The Complaint alleged that Stephen Case and Tracey Case were obligated to indemnify and reimburse Cincinnati in the amount of $449,546.52, pursuant to the Indemnity Agreement, with that amount being subject to increase going forward. (*Id.*, ¶¶ 20-21.)[2] According to the Complaint, Cincinnati demanded indemnification and reimbursement from Stephen Case and Tracey Case in writing in July 2018 and October 2018 pursuant to the Agreement; however, the Cases failed and refused to provide such indemnity and reimbursement to Cincinnati as required by the Agreement. (*Id.*, ¶¶ 22-24.)

On the strength of these and other related factual allegations, Cincinnati's Complaint asserted a claim against Stephen Case and Tracey Case for breach of the indemnity agreement, and a claim against Case Construction for equitable indemnity, reimbursement and exoneration under the common law. The Complaint confirmed that Cincinnati sought recovery of all losses and expenses incurred under the Case Construction surety bonds, as enumerated in the pleading.

The court file reflects that all three defendants were properly served with process several months ago. In particular, returns of service demonstrate that a private process server personally served the Summons and Complaint on Stephen Case and Case Construction at an address in Mobile, Alabama on March 29, 2019. (Docs. 7 & 8.) Another return of service shows that a private process server personally served the Summons and Complaint on Tracey Case at a different address in Mobile, Alabama on April 7, 2019. (Doc. 12.) When defendants failed to appear or file a responsive pleading within the time prescribed by Rule 12(a), Fed.R.Civ.P., Cincinnati applied to the Clerk of Court for entry of default. (Doc. 13.) On May 13, 2019, a Clerk's Entry of Default was entered against all three defendants pursuant to Rule 55(a), Fed.R.Civ.P., for failure to plead or otherwise defend within the time provided by the rules. (Doc. 14.) Copies of both plaintiff's application for default and the Clerk's Entry of Default were served on defendants by mail at the same addresses where they were served with process. On June 24, 2019, Cincinnati filed its Motion for Default Judgment, and served notice of that motion on each defendant via U.S. mail addressed to his, her or its address where service of

---

[2] It appears that Cincinnati's arithmetic in the Complaint was erroneous. After all, the sum of the three categories of damages enumerated in the pleading ($40,181 + $353,387.32 + $51,669.56) is $445,237.88, not $449,546.52 as alleged in the Complaint. The discrepancy is not material in terms of placing defendants on notice of the nature and magnitude of the relief sought by Cincinnati in this litigation.

process was perfected. (Doc. 15.) Despite entry of default against them and repeated notification of these ongoing default proceedings, defendants have neither appeared nor defended in this action, much less undertaken to set aside the entry of default or forestall entry of default judgment against them.

## II. Analysis.

### A. *Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, defendants have failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process. In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F.Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what defendants have done here. Despite being served with process back in late March and early April, 2019, Case Construction, Stephen Case and Tracey Case have declined to appear or defend, and have thereby stopped the progress of this litigation dead in its tracks.

The law is clear, however, that defendants' failure to appear and the Clerk's Entry of Default do not automatically entitle Cincinnati to a default judgment in the requested (or any) amount. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's

liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F.Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint and is satisfied that Counts I and II set forth viable causes of action against defendants under Alabama law. In particular, Count I alleges that Stephen Case and Tracey Case breached the Indemnity Agreement. Supporting well-pleaded factual allegations include the relevant provisions of the Agreement (such as the Cases' obligation to exonerate and indemnify Cincinnati for losses incurred by reason of having executed the Case Construction bonds), Cincinnati's incurrence of losses on the bonds as a result of Case Construction's failure to pay subcontractors on the South Alabama and AltaPointe projects and the expiration of its general contracting license during the AltaPointe project, and Stephen and Tracey Case's subsequent failure and refusal to exonerate and indemnify Cincinnati for these losses. Similarly, Count II sets forth a claim for equitable indemnity, reimbursement and exoneration against Case Construction based on its status as principal on the Case Bonds, for which Cincinnati incurred the above-described losses.[3] The factual allegations set forth in support of Counts I and II are adequate to state viable causes of action under Alabama law for breach of indemnity agreement and equitable indemnity, reimbursement and exoneration. Because the Complaint's well-pleaded factual allegations are deemed admitted by virtue of defendants' default, and because such allegations are sufficient to state actionable claims under Alabama law, the Court finds that Stephen Case and Tracey Case are liable to Cincinnati on Count I, and that Case Construction is liable to Cincinnati on Count II.

---

[3] *See generally Amerada Hess Corp. v. Owens-Corning Fiberglass Corp.*, 627 So.2d 367, 370 (Ala. 1993) ("indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than leave it on the indemnitee") (citation omitted).

In sum, entry of default judgment pursuant to Rule 55 is appropriate against all defendants, given their failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which defendants have now admitted) to establish their liability to Cincinnati on the enumerated claims.

### B. Plaintiff's Damages.

#### 1. Applicable Legal Standard.

Notwithstanding the propriety of default judgment against defendants, it remains incumbent on Cincinnati to prove its damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks."). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[4]

---

[4] In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Virgin*

## 2. Indemnification Amounts.

In support of the default judgment award it seeks, Cincinnati submits the Affidavit of Michael F. Fox, who is Cincinnati's Assistant Secretary and Manager Bond Claims. Fox professes to have personal knowledge of the amounts paid by Cincinnati pursuant to its obligations in issuing the subject bonds, and is therefore competent to quantify plaintiff's losses that are properly subject to recovery under the indemnification claims. The Fox Affidavit breaks down the losses incurred by Cincinnati by reason of having executed the Case Construction bonds on the South Alabama and AltaPointe projects as follows: (i) Cincinnati made payments to 11 Case Construction subcontractors/suppliers to compromise their claims on the AltaPointe bonds, totaling **$122,855.00**;[5] (ii) Cincinnati incurred a net loss of **$230,532.32** in arranging for completion of the AltaPointe project pursuant to its obligations under the AltaPointe bonds after Case Construction's general contractor license expired and its performance on the project was suspended by AltaPointe; and (iii) Cincinnati made payment in the amount of **$40,181** to Metropolitan Glass Co., Inc. under the South Alabama bonds. (Fox Aff. (doc. 15-2), ¶¶ 4-6.) Fox further avers that, in paying these amounts and incurring these losses, Cincinnati operated with the belief that it was liable for the payments and/or that such payments were reasonable under the circumstances. (*Id.*, ¶ 8.)

Plaintiff has made a sufficient showing that these losses were actually incurred by reason of having executed the Case Construction bonds, and that Cincinnati paid those losses under the belief that it was liable for such payments and/or that they were reasonable under the

---

*Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show … damages, no evidentiary hearing is required."). Cincinnati has not requested a hearing, but instead relies solely on the Affidavit of Michael F. Fox in support of its claimed damages amount. (Doc. 15-3, at 6-7.) In light of these authorities and circumstances, the Court will fix the amount of damages based on plaintiff's evidentiary submission, without conducting a formal hearing.

[5] Plaintiff's itemizes those payments to each of the subcontractors/suppliers as follows: (i) $6,384 to Deas Millwork Co.; (ii) $675 to A&M Portables, Inc.; (iii) $7,644 to C&C Construction; (iv) $4,257 to Superior Masonry, Inc.; (v) $21,565 to Premier Plumbing & Piping; (vi) $9,788 to Kitchens Electric; (vii) $3,148 to Howard Services; (viii) $850 to Hartley Brothers; (ix) $55,000 to CBC Contracting; (x) $6,979 to Thomas Drywall; and (xi) $6,565 to Smith-McKinney dba Woo. (Fox Aff. (doc. 15-2), ¶ 4.)

circumstances.  Thus, these itemized amounts are recoverable in indemnity under the terms of the Indemnity Agreement and the general principles of equitable indemnity, exoneration and recovery.  In light of the foregoing, damages are properly awarded against Stephen Case and Tracey Case on Count One in the amount of **$393,568.32** (or $122,855 for the AltaPointe subcontractor/supplier payments, $230,532.32 for completion of the AltaPoint project, and $40,181 to Metropolitan Glass under the South Alabama bonds), and against Case Construction on Count Two in the same amount.

### 3. *Attorney's Fees and Expenses.*

In addition to reimbursement for the losses incurred pursuant to the Case Construction bonds, Cincinnati seeks an award of "expenses, including fees and disbursements of counsel," totaling $62,287.10.  (Doc. 15-3, at 5.)  Although plaintiff has not disaggregated this figure or explained its component parts, the Court surmises that the lion's share of the amount claimed consists of attorney's fees.  The trouble is that Cincinnati has presented its proposed attorney's fee/expenses award as a lump sum.  No further information is provided in plaintiff's brief or evidentiary submission that might bear on the nature, specifics or reasonableness of this amount.  From plaintiff's filings, it is impossible to discern the claimed rates, hours or tasks performed.  There is no factual basis in the record to assess the reasonableness of these attorney's fees.  Plaintiff does not identify which timekeeper worked on which tasks, what the applicable billing rates were, or how much time was spent on any task.  Plaintiff offers no evidence that the subject rates (whatever they may be) are reasonable in the applicable legal market for this kind of routine collection work for non-responsive debtors.  The Court has not been furnished with an evidentiary basis for making any sort of reasonableness determination here.  Under well-settled law, even where (as here) a contract allows for recovery of attorney's fees, requests for contractually-authorized attorney's fees are subject to a reasonableness review and are left to the discretion of the trial court.  *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."); *Jones v. Sherrell*, 52 So.3d 527, 531 (Ala.Civ.App. 2010) ("An award of attorney fees, where permissible, is a matter within the discretion of the trial court and will not be reversed on appeal absent a showing that the trial court abused its discretion.") (citations omitted).

Under the circumstances, and given the considerable shortcomings in plaintiff's proof, the Court exercises its discretion to **disallow** recovery of attorney's fees and expenses in this case for lack of the requisite showing of reasonableness.

**III.     Conclusion.**

For all of the foregoing reasons, plaintiff's Motion for Default Judgment (doc. 15) is **granted**. Default judgment will be entered in favor of Cincinnati and against defendants, Case Construction, LLC, Stephen G. Case, and Tracey Case, jointly and severally, in the amount of **$393,568.32**.

DONE and ORDERED this 8th day of July, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
